# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WOOF, INC.<br>3845 N. Chesterbrook Road<br>Arlington, VA 22207<br><br>    Plaintiff.<br><br>    v.<br><br>THE DOG SPOT, LLC<br>774 Harvard Street, N.W.<br>Washington, D.C. 20001<br><br>    Serve: Jane Huelle<br>           774 Harvard Street, N.W.<br>           Washington, DC 20001<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION AND DISTRICT OF COLUMBIA TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff Woof, Inc., by and through undersigned counsel, hereby brings suit against The Dog Spot, LLC for federal and common law trademark infringement and unfair competition. In support thereof, Woof, Inc. states and alleges as follows:

### PARTIES

1.      Plaintiff Woof, Inc. ("Plaintiff" or "A.K.A. Spot") is a corporation organized and existing under the laws of Virginia, which conducts its business operations at 3845 N. Chesterbrook Road, Arlington, VA 22207.

2.      Plaintiff owns and operates A.K.A. Spot, a pet supply and dog-grooming store, located at 2509 N. Franklin Road, Arlington, VA 22201.

3.    Upon information and belief, Defendant The Dog Spot, LLC ("Defendant" or the "The Dog Spot") is a limited liability corporation organized and existing under the laws of the District of Columbia, which conducts its business operations at 774 Harvard Street, N.W., Washington, D.C. 20001.

4.    Defendant owns and operates The Dog Spot, a pet food and supply store, located at 1625 Wisconsin Avenue, N.W., Washington, D.C. 20007.

## JURISDICTION AND VENUE

5.    This action is for trademark infringement and unfair competition arising under the Trademark Act of 1946, as amended ("The Lanham Act"), 15 U.S.C. § 1051, et seq., as well as for trademark infringement and unfair competition under the laws of Washington, D.C.

6.    This Court has jurisdiction over Counts I and II of this Complaint pursuant to 15 U.S.C. § 1121 because this is an action arising under the Lanham Act and under 28 U.S.C. § 1338(a) because this is an action arising under an Act of Congress relating to trademarks; and under 28 U.S.C. § 1331 because this is an action arising under the laws of the United States.

7.    This Court has supplemental jurisdiction over Counts III and IV of this Complaint pursuant to 15 U.S.C. § 1338(b) because it is an action asserting claims of common law trademark infringement and unfair competition and joined with substantial and related claims under the trademark laws of the United States.

8.    This Court has personal jurisdiction over the Defendant pursuant to D.C. Code § 13-423(1) and (3) because Defendant transacts business within the District of Columbia and because Defendant has caused tortious injury in the District of Columbia by acts within the District of Columbia.

9.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c).

2

## HISTORY OF THE "A.K.A. SPOT" NAME AND MARK

10.     Since May 2003, A.K.A. Spot has owned and continuously and prominently used the name and mark **A.K.A. SPOT** as a source identifier for its pet boutique and dog grooming shop.

11.     A.K.A. Spot is the owner of U.S. Trademark Registration No. 2,912,833 for **A.K.A. SPOT** covering a "retail store featuring pet supplies and pet-related merchandise."  A copy of the trademark registration is attached hereto as <u>Exhibit 1</u>.

12.     The **A.K.A. SPOT** name and mark is featured prominently on the sign outside A.K.A. Spot's store in Arlington, VA.  A photograph of A.K.A. Spot's signage is attached hereto as <u>Exhibit 2</u>.

13.     The **A.K.A. SPOT** name and mark are featured prominently in A.K.A. Spot's promotional materials.

14.     A.K.A. Spot has expended substantial resources in advertising and promoting the **A.K.A. SPOT** name and mark in regional and national publications, including in the *Washington City Paper*, *Washingtonian Magazine*, the *Washington Post*, and *Bark Magazine*.  Examples of A.K.A. Spot's print advertisements are attached hereto as <u>Exhibit 3</u>.

15.     Because of its extensive use, sales and advertising, A.K.A. Spot has developed valuable goodwill and rights in the **A.K.A. SPOT** name and mark.

16.     The **A.K.A. SPOT** name and mark are recognized by members of the consuming public as a proprietary designation that identifies A.K.A. Spot as a reputable source for pet food and supply products.

17.     As a result of the duration and extent of use of the **A.K.A. SPOT** name and mark in connection with A.K.A. Spot's services, the widespread geographic use of the mark and the

recognition of the mark by consumers, the **A.K.A. SPOT** name and mark have become well known throughout the region, including in the District of Columbia.

18.    The word **"SPOT"** is featured prominently in A.K.A. Spot's mark and A.K.A. Spot is known as **"SPOT"** throughout the region, including in the District of Columbia.

19.    Because of the superior quality of its products and services and its popularity with consumers, A.K.A. Spot has received favorable and unsolicited press in regional and national publications, including in, the *Washington Post*, the *Washington Post Express*, *Bark Magazine* and *OnTap Magazine*.

20.    As a result of A.K.A. Spot's continuous and longstanding use of the **A.K.A. SPOT** name and mark, and as a result of the public exposure garnered through sales, promotion and unsolicited gratuitous publicity, including word of mouth, the **A.K.A. SPOT** name and mark have acquired secondary meaning and have become well and favorably known as the designator of origin for pet supplies and dog grooming services offered by A.K.A. Spot.

## DEFENDANT'S WRONGFUL ACTS

21.    Upon information and belief, in February 2007, Defendant began operating a directly-competitive pet food and supply store under **THE DOG SPOT** name and mark in the Georgetown neighborhood of Washington, D.C.

22.    Since then, Defendant has made prominent use of **THE DOG SPOT** name and mark, along with the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** in commerce by posting a large sign outside its Georgetown store, located less than two and one-half (2.5) miles from A.K.A. Spot's store.

23.    Defendant has made prominent use of **THE DOG SPOT** name and mark, along with the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** in commerce on its website.

4

24.    Defendant has made prominent use of **THE DOG SPOT** name and mark, along with the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** in commerce by advertising in the same publication, *The City Paper*, which A.K.A Spot has used for years to promote its goods and services under the **A.K.A. SPOT** name and mark.

25.    The dominant word in Defendant's signage and advertising is the word **"SPOT."**

26.    Upon information and belief, Defendant has willfully and knowingly adopted, advertised, and used **THE DOG SPOT** name and mark, and the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** to identify its dog-related services for the purposes of profiting from and hijacking the goodwill of A.K.A. Spot.

27.    The offering for sale, the advertising for sale, and the sale by Defendant of goods and services under **THE DOG SPOT** name and mark, along with the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** is likely to cause confusion, mistake, and deception as to the source and origin of Defendant's goods and services.

28.    Upon information and belief, Defendant's customers have asked if The Dog Spot is affiliated with A.K.A. Spot.

29.    After A.K.A. Spot learned that Defendant was operating a pet food and supply store under **THE DOG SPOT** name and mark, along with the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** A.K.A. Spot protested Defendant's use of this confusingly similar name and mark.  Copies of letters from counsel for A.K.A. Spot to counsel for Defendant are attached hereto as Exhibit 4 and Exhibit 5, respectively.

30.    Despite its efforts, however, A.K.A. Spot has been unsuccessful in preventing the continued violations of its rights.

31.    Defendant's continuing infringing activity, based out of a physical location less than two and one-half (2.5) miles from A.K.A. Spot's store, demonstrates a willful and bad faith intent to create confusion, deception, and mistake in the minds of both A.K.A. Spot's customers and potential customers and Defendant's customers and potential customers and a willful and bad faith attempt to trade on A.K.A. Spot's goodwill by implying a similarity, identity, connection, or relationship between Defendant and A.K.A. Spot.  As a result of this infringing activity, Defendant has been and will be unjustly enriched.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

32.    Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 31 as if fully set forth herein.

33.    The offering of goods and services by Defendant under **THE DOG SPOT** name and mark is likely to cause confusion among consumers with the goods and services offered by A.K.A. Spot.

34.    Defendant's use of **THE DOG SPOT** name and mark is without the permission or authorization of A.K.A. Spot.

35.    In view of the likelihood of consumer confusion caused by Defendant's use of **THE DOG SPOT** name and mark, along with the phrases **"SEE SPOT SIT. SEE SPOT STAY,"** Defendant's continued use of **THE DOG SPOT** name and mark is likely to cause confusion, mistake and deception among purchasers and the public generally, leading them to believe, falsely, that Defendant's goods and services are those of, sponsored or approved by, or are in some way connected with A.K.A. Spot, to the irreparable injury of A.K.A. Spot and of the public.  Despite such a likelihood of public confusion, mistake or deception, Defendant has

continued to use and is presently using **THE DOG SPOT** name and mark and disregarding A.K.A. Spot's demand that Defendant cease this activity.

36. Upon information and belief, Defendant's acts complained of herein have for their objective the willful appropriation of A.K.A. Spot's rights in its proprietary mark and of the valuable goodwill of A.K.A. Spot's business, thereby unlawfully benefiting Defendant.

37. Upon information and belief, Defendant's continued use of **THE DOG SPOT** name and mark will be likely to injure the business and reputation of A.K.A. Spot and will dilute the distinctive quality of A.K.A. Spot's source identifying marks.

38. The acts complained of actually deceive and are likely to deceive the public into believing, falsely, that Defendant's services are those of, and are sponsored or approved by, or are in some way connected with A.K.A. Spot, all to the irreparable injury of A.K.A. Spot's trade and goodwill and to the injury of the public.

39. The aforesaid acts constitute federal trademark infringement in direct violation of 15 U.S.C. § 1132(1).

**WHEREFORE**, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## COUNT II
## FEDERAL UNFAIR COMPETITION

40. A.K.A. Spot repeats and incorporates by reference the allegations in Paragraphs 1 through 39 as if fully set forth herein.

41. The aforesaid acts constitute federal unfair competition in the form of passing off, false representation, false advertising and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

**WHEREFORE**, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

## COUNT III
## DISTRICT OF COLUMBIA TRADEMARK INFRINGEMENT

42.     A.K.A. Spot repeats and incorporates by reference the allegations in Paragraphs 1 through 41 as if fully set forth herein.

43.     Defendant's use of **THE DOG SPOT** name and mark without the permission or authorization of A.K.A. Spot is likely to cause confusion, mistake and deception among purchasers and the public generally, leading them to believe, falsely, that Defendant's goods and services are those of, sponsored or approved by, or are in some way connected with A.K.A. Spot, to the irreparable injury of A.K.A. Spot and of the public.  Despite such a likelihood of public confusion, mistake or deception, Defendant has continued to use and is presently using **THE DOG SPOT** mark and disregarding A.K.A Spot's demand that Defendant cease this activity.

44.     Upon information and belief, Defendant's acts complained of herein have for their objective the willful appropriation of A.K.A. Spot's rights in its proprietary marks and of the valuable goodwill of A.K.A. Spot's business, thereby unlawfully benefiting Defendant.

45.     Upon information and belief, Defendant's continued use of **THE DOG SPOT** name and mark will be likely to injure the business and reputation of A.K.A. Spot and will dilute the distinctive quality of A.K.A. Spot's source identifying mark.

46.     The acts complained of actually deceive and are likely to deceive the public into believing, falsely, that Defendant's services are those of, and are sponsored or approved by, or are in some way connected with A.K.A. Spot, all to the irreparable injury of A.K.A. Spot's trade and goodwill and to the injury of the public.

47.     The aforesaid acts constitute common law trademark infringement in the District of Columbia.

48.     The aforesaid acts of Defendant are greatly and irreparably damaging to A.K.A. Spot and will continue to be greatly and irreparably damaging to A.K.A. Spot unless enjoined by this Court, and A.K.A. Spot is without an adequate remedy at law.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

**COUNT IV**
**DISTRICT OF COLUMBIA UNFAIR COMPETITION**

49.     A.K.A. Spot repeats and incorporates by reference the allegations in Paragraphs 1 through 48 as if fully set forth herein.

50.     Defendant's use of **THE DOG SPOT** name and mark is likely to, and does, permit Defendant's to "palm off" its goods and services as those of A.K.A. Spot, which is to the detriment of A.K.A. Spot and unjustly enriches Defendant.

51.     On information and belief, the acts of Defendant, as heretofore alleged, have been done with the intent to deceive the public, for the purpose of misappropriation of A.K.A. Spot's valuable goodwill and proprietary interest in A.K.A. Spot's source-identifying **A.K.A. SPOT** mark, and in undertaking such actions, Defendant have acted to cause injury to A.K.A. Spot, all of which constitutes palming off and common law unfair competition.

52.     The aforesaid acts of Defendant are greatly and irreparably damaging to A.K.A. Spot and will continue to be greatly and irreparably damaging to A.K.A. Spot unless enjoined by this Court, and A.K.A. Spot is without an adequate remedy at law.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as set forth in the prayer for relief.

9

## JURY TRIAL DEMAND

53.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, A.K.A. Spot hereby demands a trial by jury on any issue triable of right by a jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Woof, Inc. prays:

i.    That Defendant and any related companies, including parents, officers, directors, agents, owners, employees, representatives and attorneys and all others acting under, or in concert with them, or with any of them, be forthwith preliminarily and permanently enjoined and restrained from:

a.    using a name and mark confusingly similar to A.K.A. Spot's proprietary and source identifying **A.K.A. SPOT** name and mark or any colorable imitation thereof upon or in connection with Defendant's services;

b.    in any manner imitating A.K.A. Spot's proprietary and source identifying **A.K.A. SPOT** name and mark for the purpose of acquiring A.K.A. Spot's trade and goodwill by imitation, fraud, mistake or deception; and

c.    unfairly competing with A.K.A. Spot in any manner whatsoever.

ii.    For an Order holding that Defendant's activities complained constitute Federal and Common Law Trademark Infringement and Federal Unfair Competition and Common Law Unfair Competition.

iii.    For an Accounting of all Damages in the form of Defendant's profits gained as a result of its infringing acts.

iv.    For an Order directing Defendant to file with this Court and to serve upon Plaintiff within thirty (30) days after service of the injunction, a report, in writing, and under

oath, setting forth in detail the manner and form in which Defendant have complied with the injunction and any further orders of this Court.

      v.    That Defendant and its related companies, parents, agents, employees, representatives, and all others acting under its direction or control or in concert with them, or any of them, be ordered to deliver up for destruction all advertising materials, promotional materials, flyers, signs, and any and all other materials which bear **THE DOG SPOT** name and mark, or which features the word **"SPOT"** prominently.

      vi.    For joint and several liability for damages and a trebling of same, profits and costs of suit, pursuant to 15 U.S.C. § 1117.

      vii.    For an award of attorneys' fees due to the exceptional nature of this case, pursuant to 15 U.S.C. § 1117.

      viii.    For such other and further relief as the Court may deem proper.

Dated:  December 11, 2007           Respectfully submitted,

                          HOLLAND & KNIGHT LLP

                          By:_____
                              Thomas W. Brooke (D.C. Bar No. 430636)
                              2099 Pennsylvania Avenue, N.W.
                              Suite 100
                              Washington, D.C.  20006
                              Telephone:  (202) 663-7271
                              Facsimile:  (202) 955-5564
                              E-mail:  thomas.brooke@hklaw.com

# 4969951_v1

# EXHIBIT 1

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Aug 28 04:07:29 EDT 2007*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

[ Logout ] Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | A.K.A. SPOT THE PET'S SHOP |
| **Goods and Services** | IC 035. US 100 101 102. G & S: Retail store featuring pet supplies and pet-related merchandise. FIRST USE: 20030501. FIRST USE IN COMMERCE: 20030501 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 03.13.01 - Feet, animal; Foot prints, nonhuman; Paws and paw prints<br>26.03.02 - Ovals, plain single line; Plain single line ovals<br>26.03.17 - Concentric ovals; Concentric ovals and ovals within ovals; Ovals within ovals; Ovals, concentric<br>26.03.21 - Ovals that are completely or partially shaded |
| **Serial Number** | 78265430 |
| **Filing Date** | June 20, 2003 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 28, 2004 |
| **Registration Number** | 2912833 |
| **Registration Date** | December 21, 2004 |
| **Owner** | (REGISTRANT) Woof, Inc. CORPORATION VIRGINIA 3845 N. Chesterbrook Road Arlington VIRGINIA 22207 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "the pet's shop" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

| | |
|---|---|
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

# EXHIBIT 2



# a.k.a. spot

pet boutique · doggie grocery · doggie self-wash
2509 n. franklin road · arlington, va · 703.248.0093
open monday-friday: 11-7, saturday: 10-6, sunday: 11-4

> **events** - Yappy Hour pups people pool pix posted!
> **SummersEnd Sale** on now - see events page
> See the 'about' page for jobs @ aka spot

**about   where   spot•light   grocery   shopping   events   contact**

Preview the aka spot blog!



# EXHIBIT 3

# Don't sit.  Don't roll over.  Don't play dead.
# Stand.  Leap.  Reach.  Play.



photo: www.amandajones.com



a.k.a. spot - the pet's shop
2509 n. franklin road
arlington, va 22201
703.248.0093

online at www.akaspot.com
toll-free 866.844.7768

Don't sit
Don't roll over
Don't play dead



**Stand
Leap
Reach
Play**



now carrying
the finest in
premium pet foods!

a.k.a. spot - the pet's shop
2509 n. franklin road
arlington, va  22201
703.248.0093

doggie self-wash
stations now available!
call for details

visit spot online at
www.akaspot.com

# don't miss out on yappy hour!



the doggie
social hour!
be there or b$^2$

2-for-1 specials
from aka spot
& java shack

doggie swimming pool . . . pawcasso artistry . . . more!
wednesday, july 18th, 5 - 7pm
where aka spot's front yard meets java shack's patio!

a.k.a. spot - the pet's shop
2509 n. franklin rd
arlington, va
703.248.0093



pet boutique, doggie grocery, and doggie self-wash

hours: monday-friday 11-7 • saturday 10-6 • sunday 11-4
for more information, visit www.akaspot.com

give a dog a bone ... and a bath
spot's got it all



dog & cat,
canned & kibble
raw food diet
& frozen bones

natural,
organic,
holistic, &
human grade

pet boutique, doggie grocery, and doggie self-wash

a.k.a. spot - the pet's shop
2509 n. franklin rd
arlington, va
703.248.0093





hours: monday-friday 11-7 • saturday 10-6 • sunday 11-4
for more information, visit www.akaspot.com

**dog** *(verb, transitive)*: dŏg

## 1. to inspire



redefining expectations



a.k.a. spot - the pet's shop
2622 wilson blvd
arlington, va  22201
703.248.0093
www.akaspot.com

# EXHIBIT 4

# Holland & Knight

Tel  202 955 3000
Fax 202 955 5564

Holland & Knight LLP
2099 Pennsylvania Avenue. N.W.. Suite 100
Washington. D.C.  20006
www.hklaw.com

August 31, 2007

**THOMAS W. BROOKE**
Telephone: (202) 663-7271
Facsimile: (202) 955-5564
Internet: thomas.brooke@hklaw.com

Ms. Jane Huelle
The Dog Spot
1625 Wisconsin Avenue, N.W.
Washington, D.C.  20007-2721

Re:    Use of the Trademark **SPOT** in Connection With a Dog-Related Boutique
Our Ref.:    102789.00001

Dear Ms. Huelle:

This firm is counsel to Woof, Inc., the owner and operator of a pet boutique/doggie grocery and dog grooming shop located in the Clarendon-Court House neighborhood of Arlington, Virginia and operating under the name **A.K.A. SPOT**.  The dominant word in our client's signage and advertising is the word "spot."  We understand that you have spoken to Ms. Lucy McCausland of Woof, Inc.

In addition, our client is the owner of U.S. Trademark Registration No. 2,912,833 for its trademark.  A copy of the trademark registration found at the United States Patent and Trademark Office's web site is enclosed.  Also enclosed is a copy of an excerpt from our client's web site showing the sign outside its store along with several advertisements that have appeared in publications such as The City Paper, The Washington Post, and The Washington Black Book.

Also enclosed are copies of articles about our client and its store from OnTap magazine, The Express, and Bark magazine.  As you will see, our client has become well known in the Washington, D.C. metro area as a purveyor of dog-related and pet-related goods and services under the name and mark A.K.A. SPOT.

Under the United States Trademark Act, the owner of a trademark has exclusive rights to use that name or any similar name in connection with its goods and services.  See 15 U.S.C. § 1051 et seq.  Registration of a Mark on the Federal Register of the United States Patent and Trademark Office gives a trademark owner additional rights and presumptions.

It has recently come to our attention that you have opened a boutique offering services identical to those of our client under the name **THE DOG SPOT** in Georgetown.  You have run advertisements in The City Paper just as our client has done for several years.  In addition, customers have entered our client's store and asked if your operation in Georgetown was connected with our client's business.  Your use of the words "See Spot Sit.  See Spot Stay." further emphasizes your use of the word "Spot."

Ms. Jane Huelle
The Dog Spot
August 31, 2007
Page 2

Under the federal trademark statute, the owner of a trademark may enjoin others from using the similar marks and, if appropriate, collect damages, which may be trebled in some circumstances, along with attorney fees and costs. Trademark disputes are determined by assessing whether or not consumers are likely to be confused over use of a similar mark. The courts traditionally look at a number of factors, including the similarity of the goods and services at issue, the similarity of the marks themselves, the class of customers, the methods of advertising and whether or not actual confusion has occurred. In this case, the marks are very similar as both our client and your business use the word "Spot" to identify the business, the services are identical, as are the class of customers and the methods of advertising. Moreover, evidence that consumers are confused over your use of a similar name has already begun to accumulate.

Therefore, we must request that you cease use of the name **THE DOG SPOT** or any other name or mark that confusingly similar with our clients name **A.K.A. SPOT**. This matter is of great importance to our client and we would like to resolve this issue quickly and without too much cost or destruction to either of our clients. Please provide us with your assurances that you will take all steps to immediately change the name of your business within the next ten (10) days. We look forward to hearing from you.

Sincerely,

HOLLAND & KNIGHT LLP

Thomas W. Brooke

Enclosures

cc:    Mr. Doug McCausland
       Leigh Basha, Esq.

# 4761928_v1

# EXHIBIT 5

# Holland✛Knight

Tel  202 955 3000
Fax  202 955 5564

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C.  20006-6801
www.hklaw.com

September 28, 2007

THOMAS W. BROOKE
Telephone:  (202) 663-7271
Facsimile:  (202) 955-5564
Internet:  thomas.brooke@hklaw.com

**VIA FACSIMILE 202.293.7860**

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Ave., NW
Washington, D.C.  20037-3213

Re:    Use of the trademark **SPOT** in connection with a dog-related boutique
Your Ref:    D1998
Our Ref.:    102789.00002

Dear Leigh Ann:

We reviewed your letter of September 17, 2007.  In the hopes of avoiding costly and protracted litigation, we provide the following analysis in furtherance of our assertion that your client, The Dog Spot LLC, is in violation of Woof, Inc.'s rights under the Lanham Act.

## I.    BACKGROUND

Since May 2003, Woof, Inc. ("A.K.A. Spot") has owned and continuously and prominently used the name and mark A.K.A. SPOT as a source identifier for its pet food and supply store.  We previously provided depictions of A.K.A. Spot's Arlington, Virginia store bearing the A.K.A. SPOT name and mark as featured in various local newspapers and other publications.  Moreover, A.K.A. Spot has spent tens of thousands of dollars to advertise its services offered under this name and mark and to promote its goodwill.

As a result of A.K.A. Spot's extensive use, sales, and advertising, the A.K.A. SPOT name and mark is recognized by members of the consuming public as a proprietary designation that identifies A.K.A. Spot as the source of associated pet food and supply products.

Long after A.K.A. Spot's adoption and first use of the A.K.A. SPOT name and mark, The Dog Spot opened a directly competitive store, located in Georgetown, only a few miles away, bearing a mark that is unquestionably similar to the A.K.A. SPOT name and mark without license, authority, or consent.  Further, The Dog Spot uses said similar mark on its signs and other materials.

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 2

As noted in our initial letter, advertisements for The Dog Spot, which incorporate the similar mark, are now being placed in the same local newspaper (The City Paper) that A.K.A. Spot has utilized for years to promote its goods and services under its name and mark **A.K.A. SPOT**.

A.K.A. Spot specifically requested The Dog Spot to stop using its confusingly similar version of A.K.A. Spot's A.K.A. SPOT name and mark in connection with its pet food and supply store. This use could tarnish the reputation of the A.K.A. SPOT mark by associating it with inferior pet food and supply products. Use of the name THE DOG SPOT dilutes the distinctive character of our client's name and mark and is likely to cause confusion among the consuming public.

Your client, a newcomer to the pet food and supply market of the greater Washington, D.C. area, appears to have adopted and used a name incorporating the word "Spot" as a trademark for the purposes of trading upon the goodwill represented by said mark and of giving The Dog Spot's store and products a commercial reputation that they otherwise would not have. This unauthorized use has caused and is likely to continue to cause confusion, mistake or deception on the behalf of the general public as to the affiliation, connection or association of The Dog Spot with A.K.A. Spot, and/or as to the source, approval or sponsorship of The Dog Spot's store by A.K.A. Spot.

Your client's unauthorized use of this mark violates A.K.A. Spot's rights under both Sections 32 and 43 of the Lanham Act as well as the statutory and common law of the Commonwealth of Virginia and the District of Columbia.

## II.    ANALYSIS

### Violation of Section 32 of the Lanham Act – Trademark Infringement

In a 1990 opinion, the District of Columbia Circuit noted that the Second Circuit's list of factors in the *Polaroid* case was "the standard test for mark infringement under the [Lanham] Act." *Basile, S.P.A. v. Basile*, 899 F.2d 35, 37, 14 U.S.P.Q.2d 1240 (D.C. Cir., 1990). Lower courts in the D.C. Circuit have followed this direction and use the *Polaroid* factors in analyzing likelihood of confusion. *E.g., Partido Revolucionario Dominicano (PRD) v. Partido Revolucionario Dominicano*, 312 F. Supp. 1, 14, 73 U.S.P.Q.2d 1170 (D.D.C. 2004) (applying the *Polaroid* factors); *Federation Internationale de Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 72, 68 U.S.P.Q.2d 1849 (D.D.C. 2003); *Malarkey-Taylor Assocs., Inc. v. Cellular Telecommunications Indus. Ass'n*, 929 F. Supp. 473, 40 U.S.P.Q.2d 1136 (D.D.C. 1996).

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 3

In the landmark decision, *Polaroid Corporation v. Polarad Electronics Corporation*, the Second Circuit set forth the following factors to determine whether there is trademark infringement:

(1)    the strength of [plaintiff's] mark;

(2)    the degree of similarity between the two marks;

(3)    the proximity of the products;

(4)    the likelihood that the prior owner will bridge the gap;

(5)    actual confusion;

(6)    the reciprocal of defendant's good faith in adopting its own mark;

(7)    the quality of defendant's product; and

(8)    and the sophistication of the buyers.

287 F.2d 492, 128 U.S.P.Q. 411 (2d Cir., 1961).

Though the *Polaroid* factors were developed for use with noncompeting goods, the Second Circuit has come to apply them even in cases where the respective goods or services are in competition. *See, e.g., Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 740, 29 U.S.P.Q.2d 1321 (2d Cir., 1994) ("[o]riginally formulated in reference to non-competing products, the *Polaroid* test has been extended to the competing products context as well"); *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75, 8 U.S.P.Q.2d 1345 (2d Cir., 1988) ("[t]he *Polaroid* test extends to competing as well as noncompeting products."); *Physicians Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 83, 8 U.S.P.Q.2d 1136 (2d Cir. 1988) ("[a]lthough the *Polaroid* test originally was applied to noncompeting products, ... it has been expanded to apply where, as here, competing goods are involved.").

To determine whether there is a likelihood of consumer confusion, the Fourth Circuit generally considers a number of factors:

(1)    the strength or distinctiveness of the mark;

(2)    the similarity of the two marks;

(3)    the similarity of the goods/services the marks identify;

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 4

    (4)    the similarity of the facilities the two parties use in their businesses;

    (5)    the similarity of the advertising used by the two parties;

    (6)    the defendant's intent;

    (7)    actual confusion;

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527, 224 U.S.P.Q. 185 (4th Cir., 1984).

Two later cases added the following factors:

    (8)    the proximity of the products as they are actually sold;

    (9)    the probability that the senior mark owner will "bridge the gap" by entering the defendant's market;

    (10)    the quality of the defendant's product in relationship to the quality of the senior mark owner's product; and

    (11)    the sophistication of the buyers.

*Shakespeare Co. v. Silstar Corp. of Am.*, 110 F.3d 234, 242, 42 U.S.P.Q.2d 1266 (4th Cir., 1997); *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 127, 16 U.S.P.Q.2d 1289 (4th Cir., 1990).

## A.    MARK STRENGTH

As set forth above, our client is prepared to demonstrate that it owns a strong and distinctive mark due to sales, advertising, promotion and unsolicited publicity.

## B.    THE DEGREE OF SIMILARITY BETWEEN THE TWO MARKS

The degree of resemblance necessary to constitute a likelihood of confusion is incapable of exact definition, but one thing is very clear: "exact similitude is not required" between the allegedly confusing marks. *Washington Speakers Bureau Inc. v. Leading Authorities Inc.*, 33 F. Supp. 2d 488, 49 U.S.P.Q.2d 1893 (E.D. Va., 1999), aff'd 217 F.3d 843 (4th Cir., 2000) ("absolute identity is not necessary for infringement; all that is necessary is enough similarity between the marks to confuse consumers.").

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 5

Significantly, there is an inverse relationship between the similarity of marks and goods. That is, where the goods and services of the parties are directly competitive, the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products. *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1242, 73 U.S.P.Q.2d 1350 (Fed. Cir., 2004) ("[b]ecause the goods are related, 'the degree of similarity necessary to support a conclusion of likely confusion declines.'") (citation omitted).

Examples are provided to illustrate this point of law:

One district court held that the "Signal Graphics" logo on the right was confusingly similar to the British bobby cop logo on the left, where the marks were both employed by photocopying and printing businesses. *Copy Cop, Inc. v. Task Printing, Inc.*, 908 F. Supp. 37, 38, U.S.P.Q.2d 1171 (D. Mass., 1995).

 

Similarly, with respect to design logos, the Trademark Board held that the logo on the right (three stylized lower case "i's") was confusingly similar to the Westinghouse logo when both were used on electrical equipment. *Westinghouse Electric Corporation v. PEK, Inc.* 1974 WL 20114, 184 U.S.P.Q. 559 (Pat.Off.T.T.A.B., 1974).

 

As you will note from the above examples, the parties' competitive marks are not identical. Indeed, even when words were incorporated into one party's mark and not into the other's, the court still held that, in light of the fact that the parties goods were directly competitive, the marks were sufficiently likely to create confusion in the customer.

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 6

There, as here, there is no question that The Dog Spot directly competes with A.K.A. Spot. Both parties are in the pet food and supply business and operate in the same geographical territory. Furthermore, The Dog Spot has now begun advertising in the same local newspaper as A.K.A. Spot has utilized for several years. For comparison purposes, the parties marks are reproduced:

Given the Fourth Circuit's guidance that "exact similitude is not required," and the application of the lessened degree requirement for similarity (as a result of our clients being directly competitive), a finding of a likelihood of confusion is unavoidable.

## C.   THE PROXIMITY OF THE PRODUCTS

The D.C. Circuit follows the Second Circuit's *Polaroid* factors, including the "proximity of the products" factor, and a district court within the circuit has held that "when there is competitive distance between the firms and/or services, consumers are not likely to be confused." *Globalaw Ltd. v. Carmon & Carmon Law Office*, 425 F. Supp. 2d 1 (D.D.C., 2006) (finding minimal overlap between parties' services and the geographic distribution of those services).

As The Dog Spot operates its business in the upper Georgetown region of Washington, D.C., a negligible distance from A.K.A. Spot's store in North Arlington, clearly no competitive distance exists for the purposes of proximity of the parties' products.

## D.   THE SIMILARITY OF THE ADVERTISING USED BY THE TWO PARTIES

In general, where the parties advertise in the same media, the likelihood of consumer confusion is increased. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 722, 70 U.S.P.Q.2d 1874 (3d Cir., 2004) ("[t]he greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion"). The Fourth Circuit has specified that, in comparing the parties' advertising, a lower court should look at several factors, including "the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 273, 77 U.S.P.Q.2d 1577 (4th Cir., 2006).

Conversely, where the parties advertise in the same media but there is little overlap geographically as to where that media appears, the advertising factor will be of little importance because few consumers will be exposed to both parties' advertising. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535, 224 U.S.P.Q. 185 (4th Cir., 1984) (finding that, even though both parties advertised in newspapers and on the radio, because they advertise in

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 7

different geographic areas, the advertising factor is not "of decisive importance"). Hence, the materials you provided that document third parties' extra-geographical use of allegedly similar marks are wholly irrelevant to the present claim of trademark infringement. Of great significance, however, is the placement of your client's mark in the same local newspaper as A.K.A. Spot, rendering a complete geographical overlap.

E.     ACTUAL CONFUSION

While you assert that consumers' inquiries as to the relationship of the parties indicates that no actual confusion exists, it is impossible to know what these consumers perceived and any such conclusion without further information is baseless. Regardless, courts have also suggested that inquiry evidence, if prevalent enough, can demonstrate actual confusion on the part of consumers. *Pignons S. A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 212 U.S.P.Q. 246 (1st Cir. 1981) ([i]nquiry as to affiliation may indicate confusion but only one such incident is "clearly insufficient").

In any event, I am sure you are aware that the test of infringement is the *likelihood* of confusion, not the proof of *actual* confusion. To prove liability, the plaintiff is not required to prove any instances of actual confusion. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463, 38 U.S.P.Q.2d 1449 (4th Cir., 1996) ("[t]he test is likelihood of confusion; evidence of actual confusion is unnecessary"); *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 166 U.S.P.Q. 353, Fed. Sec. L. Rep. (CCH) P 92749 (4th Cir., 1970).

F.     THE SIMILARITY OF THE FACILITIES THE TWO PARTIES USE IN THEIR BUSINESSES

Also relevant to the Fourth Circuit's determination of a likelihood of confusion is "the similarity of the facilities the two parties use in their businesses." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527, 224 U.S.P.Q. 185 (4th Cir., 1984). The similarity of facilities factor focuses on the parties' physical methods of distributing their goods, a factor found to weigh in the plaintiff's factor in a case where both parties operated sit-down restaurants with full bar service. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 937, 33 U.S.P.Q.2d 1481 (4th Cir., 1995).

The present situation is no different. The Dog Spot operates a pet food and supply store whose physical method of distributing its products is essentially the same as A.K.A. Spot's. Both are storefront locations in popular up-scale shopping areas.

Leigh Ann Lindquist, Esq.
Sughrue Mion, PLLC
September 28, 2007
Page 8

## VIOLATION OF SECTION 43 OF THE LANHAM ACT – UNFAIR COMPETITION

In addition to trademark infringement under Section 32 of the Lanham Act, The Dog Spot's aforesaid infringing activities, constitute unfair competition, unfair trade practices, and false designation of origin and have caused and threaten to cause great and irreparable harm to A.K.A. Spot through confusion, mistake, or deception and by denigrating and harming the name of A.K.A. Spot in violation of title 15 U.S.C. § 1125(a).

The Dog Spot's activities have caused damage to A.K.A. Spot and these activities are likely to continue to cause further damage to A.K.A. Spot. Further, there is a strong likelihood that members of the consuming public who see The Dog Spot's pet food and supply products will be confused as to the source, origin and/or sponsorship of such products.

Your client's activities amount to palming off and passing off of its products as those of A.K.A. Spot and, under 15 U.S.C. §1117(a), A.K.A. Spot would be entitled to recover any profits The Dog Spot has made from its improper conduct, as well as any and all damages A.K.A. Spot has sustained or may sustain. In addition, The Dog Spot's improper conduct exposes it to a possible award of treble damages and attorneys' fees under section 1117(a).

Again, this matter is of great importance to our client, and we would like to resolve this issue quickly and without too much cost or destruction to either of our clients. Please provide us with your assurances that your client will take all steps to immediately change the name of its business within the next ten (10) days. We look forward to hearing from you.

Sincerely,

HOLLAND & KNIGHT LLP

Thomas W. Brooke

cc:    Ms. Lucy McCauland
       Leigh Basha, Esq.

# 4824909_v1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOOF, INC.<br>3845 N. Chesterbrook Road<br>Arlington, VA 22207<br><br>     Plaintiff.<br><br>     v.<br><br>THE DOG SPOT, LLC<br>774 Harvard Street, N.W.<br>Washington, D.C. 20001<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)   **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

## DISCLOSURE STATEMENT OF PLAINTIFF WOOF, INC.

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, undersigned counsel states

that Plaintiff Woof, Inc. does not have a parent corporation and that no publicly-held corporation

owns 10 percent or more of its stock.

These representations are made in order that judges of this court may determine the need

for recusal.

Dated:  December 11, 2007            Respectfully submitted,

                                  HOLLAND & KNIGHT LLP

                                  By:_____
                                    Thomas W. Brooke (D.C. Bar No. 430636)
                                    2099 Pennsylvania Avenue, N.W.
                                    Suite 100
                                    Washington, D.C.  20006
                                    Telephone:  (202) 663-7271
                                    Facsimile:  (202) 955-5564
                                    E-mail:  thomas.brooke@hklaw.com

*07-2229 RCL*

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS

WOOF, INC.
3845 N. Chesterbrook Road
Arlington, VA 22207

*88888*

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Thomas W. Brooke
Holland & Knight LLP
2099 Pennsylvania Ave., N.W.
Washington, D.C. 20006
(202) 955-3000

## DEFENDANTS

THE DOG SPOT, LLC
774 Harvard Street, N.W.
Washington, D.C. 20001

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** 11001
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:07-cv-02229
Assigned To : Lamberth, Royce C.
Assign. Date : 12/11/2007
Description: General Civil

*JURY ACTION*

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- O  1 U.S. Government Plaintiff
- ⊙  3 Federal Question (U.S. Government Not a Party)
- O  2 U.S. Government Defendant
- O  4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

- O **A. Antitrust**
  - ☐ 410 Antitrust

- O **B. Personal Injury/ Malpractice**
  - ☐ 310 Airplane
  - ☐ 315 Airplane Product Liability
  - ☐ 320 Assault, Libel & Slander
  - ☐ 330 Federal Employers Liability
  - ☐ 340 Marine
  - ☐ 345 Marine Product Liability
  - ☐ 350 Motor Vehicle
  - ☐ 355 Motor Vehicle Product Liability
  - ☐ 360 Other Personal Injury
  - ☐ 362 Medical Malpractice
  - ☐ 365 Product Liability
  - ☐ 368 Asbestos Product Liability

- O **C. Administrative Agency Review**
  - ☐ 151 Medicare Act

  **Social Security:**
  - ☐ 861 HIA ((1395ff)
  - ☐ 862 Black Lung (923)
  - ☐ 863 DIWC/DIWW (405(g)
  - ☐ 864 SSID Title XVI
  - ☐ 865 RSI (405(g))

  **Other Statutes**
  - ☐ 891 Agricultural Acts
  - ☐ 892 Economic Stabilization Act
  - ☐ 893 Environmental Matters
  - ☐ 894 Energy Allocation Act
  - ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

- O **D. Temporary Restraining Order/Preliminary Injunction**

  Any nature of suit from any category may be selected for this category of case assignment.

  *(If Antitrust, then A governs)*

- ⊙ **E. General Civil (Other)**    OR    O **F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☒ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

*(1)*

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities- Employment<br>☐ 446 Americans w/Disabilities- Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Trademark infringement and unfair competition under 15 U.S.C. § 1051, et seq.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ [_____]  Check YES only if demanded in complaint  JURY DEMAND: YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒  If yes, please complete related case form.

DATE December 11, 2007  SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.